COSGRAVE, J.
The plaintiff on January 27, 1917, filed a petition, and on February 19, 1917, an amended petition after being required so to do by an order of this court to make the petition more definite and certain. 'The plaintiff seeks the annulment of certain liens upon property described in her petition.
The petition alleges that she, Agnes Park, is and was at all times thereinafter stated the owner of the property therein described; that on or about October 10, 1913, the defendant, Max Ledermeier as she is advised, entered into a written contract with one. Thomas F. Cassilly, who assumed to act for her but without authority to do so, to construct a dwelling house on the lot described in the petition, the cost of said construction to be $3,850. A copy of the contract is as follows:
‘‘ Cincinnati, Ohio, Oct. 10, 1913.
"By this article of agreement, Max Ledermeier agrees to build a house for Anna Mey according to plans and speeifi *151 cations, for the sum of $3,850 (Thirty-eight Hundred and Fifty Dollars) to be paid as follows:
“$300 when the cellar is walled in.
“$600 when the house is ready for roof.
“$1,175 when the house is plastered.
“$1,175 when the house is completed.
“600 when one-half brick work is up.
“Anna Mey agrees to pay the above mentioned amount of. money in the manner stipulated.
“Max Ledermeier,
“Anna Mey.”
Upon a motion to make definite and certain plaintiff was required by the court to state who “Anna Mey” was. In an amended petition the plaintiff stated that it was her maiden name and was signed to said contract inadvertently and without the knowledge or consent of this plaintiff and she supposes the said name of “Anna Mey” was so signed by one Thomas F. Cassilly, presuming to act for her.
The plaintiff further complains that on the-day of July, 1914, the defendant, Max Ledermeier, surrendered possession of said dwelling house as a completed building in accordance with the terms of said contract and specifications, the said Ledermeier so far as the plaintiff is concerned, acting through the said Cassilly.
The petition further alleges the building was not completed according to the terms of the contract. She then alleges the incompleteness of the building in certain particulars.
Plaintiff alleges that she had no knowledge that the Williamson Heater Company had furnished or intended to furnish said heater to Ledermeier. She further alleges that neither Ledermeier nor the Williamson Heater Company at any time prior to the surrender of the building to the plaintiff, delivered to the plaintiff a copy of an affidavit for lien nor furnished to the plaintiff as the owner a sworn statement showing the amount or price for which said heater was to be installed in said premises, as required by an act entitled “An Act to Create a Lien in Favor of Contractors, Sub-contractors,” as set forth in 103 Ohio Laws, page 369.
*152 She further alleges that the said Williamson Heater Company by reason of its failure to comply with the provisions and terms of said act, has no valid lien or claim for a lien upon the premises described, and that the filing of said affidavit for lien is a cloud upon the title of said property; that the said heater was installed in said dwelling house more than sixty (60) days prior to the filing of said affidavit for said lien, and by reason thereof said the Williamson Heater Company has no valid lien.
It may be said, however, in passing, that at the conclusion of the trial of the cause no very serious contention was made as to the validity of this lien.
Plaintiff further avers that on or about the 22d of October, 1915, the defendant, Harry Nitzschman and Edward' David, under the firm name of Nitzschman & David, filed in the recorder’s office of this county, an affidavit asserting a lien upon the said premises in the sum of $428.75, claimed to be due for furnishing the plumbing installed in said dwelling house, under a contract with said Max Ledermeier as principal contractor. Plaintiff avers that she had no notice until long after said dwelling house had been surrendered by said Max Ledermeier as completed that the said Nitzschman & David had been the sub-contractors under the said Max Ledermeier, that said affidavit for lien was not filed until more than one year after said dwelling house had been surrendered by said Max Ledermeier as completed, and so was filed more than sixty days after the last item, of material and labor was furnished by said Nitzschman & David in and about the plumbing that was to have been installed by them in said dwelling.
Plaintiff further avers that neither the said Max Ledermeier nor the said Nitzschman & David at any time prior to- the filing of said affidavit for lien, served the plaintiff us owner with any notice or sworn statement, as required by law, of their intention to furnish said plumbing or that anything was due or would be due to the said firm for or on account of said plumbing. Plaintiff says by reason of such failure the said Nitzschman & David have no valid lien upon said premises, and their claim is a cloud upon the title of plaintiff in said premises.
*153 The plaintiff further says that the defendant, Gilbert Kerley, on or about November 17th, 1915, more than one year after said dwelling house had been surrendered to plaintiff as completed by Max Ledermeier, filed an affidavit in the recorder’s office asserting a claim for a mechanic’s sub-contractor’s lien by virtue of a contract claimed to have been made by said Kerley with said Max Ledermeier, for painting done upon said premises, and claims a lien in the sum of $162. The plaintiff alleges that said affidavit for lien was so filed more than sixty days after the last item of labor was performed and the last item of material was furnished in and about said dwelling on said premises, and said affidavit asserts a lien on said premises in the sum of $162. Plaintiff alleges that she had no notice that the said Gilbert Kerley was or claimed to be a sub-contractor under Max Ledermeier until more than one year after said dwelling house had been surrendered by the said Max Ledermeier as completed.
Plaintiff further avers that by reason of the failure of said Ledermeier and Kerley to comply with the provisions of the Mechanic’s Lien Law, that said Kerley has no valid claim or lien upon the said premises, and that the same is a cloud upon the title of the plaintiff in and about the said premises.
Plaintiff further says that the three liens aforesaid, asserted by said sub-contractors, were wrongfully, improperly and illegally filed, that the filing of said liens has prevented the sale of said premises and has caused and is causing great and serious damage to the plaintiff and is a serious cloud upon the title of the plaintiff in and about said premises.
. Plaintiff further avers that the defendant, Max Ledermeier, has failed and neglected to complete his said contract, and that requirements under said contract fully known to said Max Ledermeier, remain to be completed in order to comply with the terms of said contract.
The plaintiff prays that the liens asserted by the defendants, the Williamson Heater Company, Nitzschman & David, and Gilbert Kerley be declared invalid, null and void; that they be ordered to cancel their liens upon the record, and that the *154 plaintiff’s title in tlie premises may be adjudged clear and free of all such claims; that the said Max Ledermeier may be ordered to finish and complete the unfinished work and materials required of him under said contract and that he be ordered to satisfy and make good any claim that the Williamson Heater Company, Nitzschman & David, or Gilbert Kerley may have against said Max Ledermeier, and for all proper relief.
To this the Williamson Heater Company filed an answer and cross-petition admitting the plaintiff is now and has been the owner of the real estate described in her said amended petition; that the said name “Anna Mey” stands for and is one and the same person as the plaintiff herein “Agnes Park.” That it entered into a contract with the said Max Ledermeier for the installation of a heater on said premises, and that the' contract price of the same was $110; that on or about the 4th day of December, 1914, this defendant served a copy of an affidavit for a lien upon the plaintiff.
The answering defendant further says that the last of such labor, work and material was furnished on the 28th day of November, 1914, and that there is due to said defendant corporation the sum of $110 with interest at the rate of six per cent, from the 4th day of December, 1914.
This answering defendant further says that on December 4th, 1914, it filed an affidavit- in the recorder’s office and sent a copy of said affidavit by duly registered letter to the plaintiff at her home in Cincinnati, Ohio, which said registered letter the plaintiff refused to receive from the letter carrier duly authorized to deliver the same by the United States Government of America; that subsequently, on the 11th day of December, 1914, the defendant served by one of its duly authorized employees a true copy of this affidavit upon the plaintiff.
Nitzschman & David filed an answer and cross-petition alleging that they had furnished the plumbing on said house under a contract for the same of $428.75; that the last of said work was not furnished because incapable of completion until the occupancy of said house.
The answering defendants further allege that there was and is no such name in the city directory or otherwise ascertainable *155 as “Anna Mey” upon whom to serve a copy of said lien, and these cross-petitioners, not knowing and having no reason to suspect that “Anna Mey” was a fictitious name adopted for unknown purposes, did, after unavailing efforts to ascertain her identity, send by mail nevertheless, a duly sworn- copy of said lien with a statement that it had been recorded addressed to her at said premises, but that the same was returned by the post-office authorities as unclaimed and unfound and not in the directory.
They therefore ask for judgment in the sum of $428.75 with interest, and that their lien be protected.
Gilbert Kerley in an amended answer and cross-petition asserts a lien for $162 for painting and glazing the dwelling-house erected on the premises of the plaintiff under a contract with Max Ledermeier.
The answering defendant says that the place of abode of the plaintiff or correct name of the owner, Agnes Park, alias Anna Mey, was unknown to him and could not with reasonable diligence be ascertained at the time of filing his said affidavit for mechanic’s lien, and for that reason no notice could be served upon said owner, in strict compliance with the General Code of Ohio in such case made and provided, and asks that the property be sold and the priorities of this and other liens be determined by the court.
Plaintiff by reply and answer puts in issue the allegations set forth in the defendant’s answers and cross-petitions.
The evidence discloses a most unusual state of facts. On October 8, 1913, the plaintiff, “Agnes Park,” purchased the lot of land in question, taking title thereto in the name of “Anna Mey. ’ ’ 'This deed was recorded on the same day in the name of Anna Mey. It appears further that subsequently, namely, on June 15, 1915, the plaintiff obtained another deed for the same property from the same grantor, which deed was not recorded, however, until February 19,1917, the same day on which she filed her amended petition, having been ordered by the court so to do, and in which she stated that “Anna Mey” and “Agnes Park” were one and the same person.
*156 It appears further that during the building of the house the plaintiff issued a number of cheeks signed Agnes Park, and payable to Anna Mey and indorsed by Anna Mey to contractors and sub-contractors, not including, however, any of the defendants herein named.
During the progress of the case a question arose as to the true relationship between the plaintiff and one Thomas F. Cassilly, who was a witness in this proceeding, and as to whom certain allegations were made in the petition. The court is of the opinion that it is not necessary to now pass upon this matter; neither is it advisable to do so, largely by reason of the fact that an action is now pending between the plaintiff herein and said Thomas F. Cassilly.
The court has followed and considered with much interest and great care the arguments of learned counsel on the different issues of law and fact presented in the ease. The evidence and the arguments present an anomaly of law and of facts, furnishing an apt illustration of the old saying: “What a tangled web we weave when first we practice to deceive.” Whether innocently or fraudulently, the plaintiff by herself or with others has covered this case with a blanket of duplicity which tempts the court to leave her where she has placed herself, and to deny her the help which she seeks through a court of equity. However, considering that the plaintiff is a woman of advanced years, and possibly through lack of experience may not have comprehended her rights and obligations- in this matter, the court will grant her such relief as may be justified under the circumstances. It must be borne in mind it is equitable relief she seeks. She has sold this property and the purchaser is withholding a portion of the purchase price until she can convey this property free of -the liens of the defendants.
It is manifest that the material, labor and skill furnished by these defendants resulted in a largely enhanced value of her property. This is not an action to foreclose these liens, though such relief is sought in the cross-petition of the defendants, but is primarily an action seeking the annulment and cancellation of these liens as a cloud upon the plaintiff’s title to this prop *157 erty. He who seeks equity must do equity and must come into court with clean hands. ’The plaintiff still has in her possession unpaid contract money sufficient to pay the face of these claims; moreover, it was stated in open court, probably not, however, in an evidential manner, that the enhanced value of this property justly requires her to pay these elaims in full. As to the enhanced value of the land and the amount of money in the hands of the plaintiff the court expresses no opinion.
The court, after a careful review'of all the facts and the law as the court believes it to be, is of the opinion that while the defendants may not have complied with all the provisions of the mechanic’s Ren law in the manner in which they should have done, nevertheless, their failure to do so was caused by the duplicity of the plaintiff herself. It was her wrongful conduct that brought this trouble upon her and the court will therefore only grant the relief prayed for upon the payment in full by the plaintiff of aU these liens with interest to these defendants, and a decree may be entered accordingly.
One of the counsel in the case, purporting to speak for all, though the court does not recall that all the other counsel concurred therein, suggested that the payment of the face of the claims would be satisfactory. The court does not feel that it can well be a party to this arrangement by reason of the above expressed conclusion, but if the parties hereto effect such an arrangement, a decree may be taken according to their understanding with each other.
In reaching a conclusion in this case the court has not been unmindful of divergent decisions of other courts, but this case is to be governed by the pecuRar circumstances surrounding it. Any other conclusion would be practicaUy saying to the plaintiff: You are seeking relief by reason of the failure of the defendants to comply with thé provisions of the mechanic’s Ren law notwithstanding the fact that you by your course of conduct made it impossible for them to do so.
The court is compelled to respond yori seek equity for yourself; blit deny it to the defendants.
The court further responds that you are not in corirt “with clean hands.”
*158 This law was designed to protect the owner of property seeking to improve it, but likewise to protect those who by their material, labor and skill have added to its value.
Section 8323-8, General Code, provides as follows:
"This act is hereby declared to be a remedial statute and to be construed liberally to secure the beneficial result, intent, and purposes thereof; and a substantial compliance with its several provisions shall be sufficient for the validity of the lien or liens hereinbefore provided for and to give jurisdiction to the court to enforce the same.”
A more thorough understanding of just what this section means may be had by reference to the early history of what is now known as the mechanic’s lien law. It is related that in 1791, Thomas Jefferson, James Madison and others ad dressed the Legislature of Mlaryland as follows:
"Your memorialists conceive it would encourage master builders to contract for the erection and furnishing of houses for certain prices agreed upon if a lien was created by law for their just claims on the house erected and on the lot of land on which it stood. In response to this suggestion the General Assembly of Maiyland on December 9, 1791, passed an act creating such liens.”
No doubt the reason for this suggestion is to be found in the fact that building material being personalty, when attached to the realty became part of the realty, and as there was no common law lien upon realty but only upon personalty, it was evident that those who so attached their personal property to the realty lost all claim to a Hen by reason thereof. It is said the civil law recognized the justice of such a Hen and made some provision for it. .
Equity could afford no relief under the circumstances above referred to, so that those laws were passed to do that which equity could not do. While rights under these laws are purely statutory and will be governed by the statutes themselves, nevertheless it has been said by some writers that it has a nature peculiar to itself of an equitable character and is said to rest *159 upon the broad ground of natural equity and commercial necessity, and while it may rest upon an equitable basis, yet without a statute the broad principles of equity would not reach it. It has been said to rest upon a broad basis of justice and right reason, giving to those who have added to the value of the property of others by their material and labor an adequate means of obtaining compensation therefor.